UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE McCALL, | ) | CASE NO. 1:21-CV-00902 |
| Plaintiff, | ) | |
| v. | ) | JUDGE PATRICIA A. GAUGHAN |
| U.S. DEPARTMENT OF HOMELAND SECURITY CLAIMS MANAGEMENT BRANCH, | ) | DEFENDANT DEPARTMENT OF HOMELAND SECURITY CLAIMS MANAGEMENT BRANCH'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS |
| Defendant. | ) | |

Defendant Department of Homeland Security Claims Management Branch ("TSA") [1], has moved this Court to dismiss this case. This Court lacks subject matter jurisdiction over Plaintiff's claims, and Plaintiff has failed to state a claim upon which relief may be granted. Therefore, this case should be dismissed with prejudice.

Plaintiff George McCall traveled from Cleveland to Las Vegas on a Frontier Airlines flight. He alleges that he packed $10,000 cash into his suitcase prior to his departure. Upon arrival, he noticed that the money was missing and a note or receipt from the TSA had been inserted into the suitcase indicating that the suitcase had been inspected. Plaintiff now sues under four theories—replevin, conversion, theft, and intentional infliction of emotional distress—and seeks the recovery of his lost money, punitive damages, and reasonable attorneys' fees.

Plaintiff's suit must be dismissed. First, Plaintiff's attempt to sue TSA and the Department of Homeland Security's Claims Management Branch must fail because the only

---

[1] TSA is a component of the Department of Homeland Security.

1

proper defendant under the Federal Tort Claims Act is the United States. Second, Plaintiff's replevin, conversion, theft, and intentional infliction of emotional distress counts all fail to state claims upon which relief may be granted.

## FACTUAL BACKGROUND

Plaintiff is a frequent traveler between Cleveland and Las Vegas. *See* Complaint, ECF No. 1-1, at ¶ 6. On or about October 2, 2020, Plaintiff traveled from Cleveland to Las Vegas with $10,000 packed into his suitcase. *See id*. at ¶¶ 5, 7. When he arrived in Las Vegas, he noticed the money was missing. *See id*. at ¶ 8. Plaintiff "also found a note/receipt from TSA that confirmed his luggage had been inspected by the Agency." *Id*. at ¶ 9.

While he was in Las Vegas, Plaintiff contacted the defendants, and when he returned to Cleveland, he filed a police report. *See id*. at ¶ 10. He filed an administrative claim, "requesting the return of his money." *See id*. at ¶ 11.

According to TSA records, Plaintiff filed a Standard Form 95 ("Claim for Damage, Injury, or Death") on or about October 2, 2020. *See* Ex. 1, attached. In it, he explains that the basis for his claim was "10,000 dollars missing from my luggage," and the amount of his claim is $10,000. *Id*. The nature and extent of his injury is that "it cause[d] stress when I arrived in Las Vegas with no money." *Id*. Plaintiff explained his belief that TSA is responsible for the loss: "the money was missing and the [TSA] put a note in my bag stating Notice of Baggage Inspection dated Oct. 2 at 9:12 p.m." *Id*.

Plaintiff filed suit in Cleveland Municipal Court on or about March 18, 2021. *See* ECF No. 1-1. On April 30, 2021, Defendant removed to this Court pursuant to 28 U.S.C. §§ 1441, 1442, and 1446. *See* ECF No. 1.

**LAW AND ARGUMENT**

I. **Legal Standards**

"Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction," a challenge to which is categorized in one of two ways: facial or factual. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true" for this analysis. *Id*. A factual attack "challenges the factual existence of subject matter jurisdiction." *Id*.

"In deciding a motion to dismiss under [Rule] 12(b)(6), the Court must accept as true all of the factual allegations contained in the complaint." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 453 (N.D. Ohio 2012). However, the Supreme Court's decisions in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make it clear that conclusory allegations are no longer sufficient to withstand a challenge under Rule 12(b)(6). To survive a motion to dismiss, a complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility' only if the complaint pleads facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must treat all factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. 678. Further, "[a] plaintiff who pleads facts that are 'merely consistent with a defendant's liability…stops short of the line between possibility and plausibility of entitlement to relief.'" *Ghaster*, 913 F. Supp. 2d. at 453-454, quoting *Iqbal*, 556 U.S. at 689.

The *Iqbal* and *Twombly* decisions are motivated by the recognition that defending oneself in litigation is expensive, even where one's defense is meritorious. "Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Iqbal*, 556 U.S. at 685. It is not fair to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678-9.

II.    **Plaintiff's Claims Should be Dismissed.**

A. **The Named Federal Entities Are Improper Defendants to This Tort Claim.**

As a threshold matter, the federal defendants must be dismissed from this suit because they are not proper defendants under the Federal Tort Claims Act ("FTCA"). The FTCA is the exclusive means by which plaintiffs may seek damages for wrongful conduct by a federal employee, and all other forms of litigation are foreclosed. 28 U.S.C. § 2679(b)(1). Plaintiff therefore may only proceed in accordance with the provisions of the FTCA.

The FTCA provides a limited waiver of sovereign immunity and a cause of action against the United States for "a certain category of claims" that would be actionable against a private person under state law. *FDIC v. Meyer*, 510 U.S. 471, 477 (1994); *see also Loeffler v. Frank*, 486 U.S. 549, 561-62 (1988) (explaining that Congress created "a new cause of action" against the United States by enacting the FTCA); 28 U.S.C. § 2674 (providing that "[t]he United States shall be liable" for certain tort claims); 28 U.S.C. § 2675(a) (providing for a civil action to "be instituted upon a claim against the United States"); 28 U.S.C. § 1346(b)(1) (granting district courts "exclusive jurisdiction of civil actions" on certain "claims against the United States").

However, the FTCA does not provide a cause of action against a federal agency. *See Meyer*, 510 U.S. at 476 (explaining that the FTCA provides the exclusive remedy and does not

authorize a suit against a federal agency in its own name); 28 U.S.C. § 2679(a) ("The authority of any federal agency to . . . be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b)."). Because the TSA is a component of the Department of Homeland Security (DHS), a federal agency, *see* 6 U.S.C. § 203(2), and the DHS Claims Management Branch is ostensibly a department of DHS, Plaintiff's claims against the federal defendants are not cognizable under 28 U.S.C. § 1346(b). These entities are improper defendants under the FTCA; accordingly, this matter must be dismissed as to these two federal defendants. *See Allgeier v. U.S.*, 909 F.2d 869, 871 (6th Cir. 1990) ("Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction.").

### B. The United States Has Not Waived Its Sovereign Immunity for the Conversion and Theft Claims.

"The doctrine of sovereign immunity shields the United States from lawsuits […] unless a claimant can point to an express waiver of sovereign immunity." *Jackson v. U.S.*, 751 F.3d 712, 716 (6th Cir. 2014). The FTCA expressly waives sovereign immunity for actions for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In other words, when determining whether the United States is liable for an alleged tortious act of its employee, a court must consider whether that employee was acting within the scope of his employment under the relevant state law at the time the act was committed. *Arbour v. Jenkins*, 903 F.2d 416, 421-2 (6th Cir. 1990). Here, the relevant state law is that of Ohio, where Plaintiff alleges his money disappeared.

5

In Ohio, determining the scope of employment is a fact-intensive inquiry. *Auer v. Paliath*, 17 N.E.3d 561, 565-6 (Ohio 2014). A court should examine whether the act was a natural aspect of the service provided or a logical result of it, as well as whether the act is "calculated to facilitate or promote" the employer's interests. *Id.*; *see also Ohio Govt. Risk Mgt. Plan v. Harrison*, 874 N.E.2d 1155, 1159 (Ohio 2007). "It is not enough that the agent's position within the principal's business simply aided her in committing the tort." *Auer*, 17 N.E.2d at 566.

"Ohio courts have generally held that an intentional tort…which in no way facilitates or promotes the employer's business, is so far outside the scope of employment that employers should not be held liable for such acts…." *Stephens v. A-Able Rents Co.*, 654 N.E.2d 1315, 1322 (Ohio Ct. App. 1995). Theft is one such tort. *See Cyrus v. Home Depot USA, Inc.*, 2008 WL 3893156 (Ohio Ct. App. Aug. 25, 2008) (theft of personal property by carpet installer).

The scope of employment for TSA's screening workforce is narrow, and it does not include taking property from passengers for personal possession or use. Pursuant to the Aviation and Transportation Security Act (ATSA), Pub. L. No. 107-71, 115 Stat. 597 (2001), the Administrator is "responsible for security in all modes of transportation, including civil aviation." 49 U.S.C. § 114(d). TSA's civil aviation security responsibilities include the duty to "screen[] all passengers and property, including United States mail, cargo, carry-on and checked baggage, and other articles, that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation on intrastate air transportation." 49 U.S.C. § 44901(a). The scope of TSA transportation security screenings is limited to "the inspection of individuals and property for weapons, explosives, and incendiaries." 49 C.F.R. § 1540.5. *See also* https://www.tsa.gov/travel/security-screening, last checked September 1, 2021 (checked

bags are screened for "explosives and other dangerous items"). Opening and checking the contents of passenger luggage before permitting it to fly on a commercial flight is, therefore, within the scope of employment of TSA's screening personnel. *See* 49 U.S.C. § 44901(b) ("[A]ll screening of passengers and property at airports in the United States…shall be supervised by uniformed Federal personnel of the [TSA].").

A TSA employee's theft of personal property from baggage and the impact thereof are not within the scope of employment. Stealing passenger property for one's own personal gain is entirely different in nature from what TSA's screening personnel are employed to do: inspect luggage for security threats and clear the luggage for travel. Theft is beyond TSA's mandate and, to the extent that it occurs, only depletes TSA's security screening and investigative resources and hurts the agency's reputation with the public. In short, no TSA employee's decision to steal from a passenger's luggage is motivated by a purpose to serve TSA's interests.

In a case involving nearly identical circumstances as this case, a federal district court in Missouri held that the United States could not be held liable, as a matter of law, for the alleged theft of a passenger's belongings from his checked baggage by an unidentified TSA employee. *Bradley v. TSA*, 552 F. Supp. 2d 957 (E.D. Mo. 2008). In *Bradley*, the plaintiff alleged that he checked his luggage at an airport and retrieved it upon his arrival as his destination. *Id*. at 959. The plaintiff alleged "that a box of jewelry … [was] missing, and that an unnamed TSA agent was responsible for taking his property." *Id*. Additionally, he "found a slip of paper stating that the luggage had been searched by a TSA agent." *Id*. The court dismissed the complaint, reasoning that, even if the allegations were true, the employee would have been acting outside the scope of his employment. Applying Missouri's law on scope of employment, which echoes Ohio's, the court reasoned:

7

> In this case, even if plaintiff had alleged and could adduce evidence that a TSA agent took his property, his claim against the TSA must be dismissed. Plaintiff offers no allegation that such a TSA agent's criminal conduct was related to his function as a security administrator, not does plaintiff allege that such a TSA agent was motivated by a desire to assist the agency in furtherance of its governmental function when he allegedly removed plaintiff's belongings from plaintiff's luggage. Rather, such an employee would be motivated solely for personal gain, and consequently operating outside the scope of his employment.

*Id*. at 961.

Other jurisdictions have reached the same conclusion. *See, e.g., Griffin v. United States*, 2018 WL 6264976 (C.D. Cal. Jan. 18, 2018) ("While TSA employees may have access to passengers' belongings – and thus the opportunity for theft – such thefts would run entirely counter to TSA's mission and workforce expectation of integrity."); *Williams v. U.S.*, 2012 WL 3638788 (D.S.C. Aug. 22, 2012) (applying Illinois law and dismissing conversion claim); *Sullivan v. Trans. Sec. Admin*., 2010 WL 3269881 (D.N.H. Aug. 19, 2010) (applying Florida law).

Similarly, in this case, even if the Court were to assume for the purpose of this motion that a TSA employee stole Plaintiff's money from his checked bag, the alleged theft would have motivated by personal reasons rather than any purpose of the TSA. An employee's theft of property, even during the course of legitimate employment activity such as searching checked baggage, clearly reaches beyond the scope of employment. Plaintiff has not stated a claim sufficient for the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged" – that is, that the United States is liable for an employee's independently-motivated tort. *See Iqbal*, 556 U.S. at 678. Accordingly, even if Plaintiff's conversion, theft, and intentional infliction of emotional distress theories are correct, the United States cannot be held liable under Ohio law regarding scope of employment and, consequently, the FTCA. These claims must be dismissed.

### C. Plaintiff's Replevin Count Fails to State a Claim Upon Which Relief May Be Granted.

"A replevin action provides the means to obtain possession of specific personal property that one has a right to possess." *Walther v. Central Trust Co., N.A.*, 590 N.E.2d 375, 378 (Ohio Ct. App. 1990). "Specific personal property must be described with sufficient clarity so that it can be identified by the officer serving the process. The action of replevin requires that the property be capable of identification and delivery, and unless the chattel is so described that it may be identified by reasonable means, the right to possession means nothing." *Id*. at 379 (internal quotations and citations omitted). "Money is not considered specifically identifiable unless it is marked or designated by being in a bag or package." *Id*.

In his Complaint, Plaintiff mentions only that he packed $10,000 cash in his luggage. *See* ECF 1-1 at ¶¶ 7, 13. He does not describe the money with any specificity or clarity beyond providing an amount. He does not describe how it was packed, nor does he describe his luggage. Further, he seeks "a money judgment for the personal property (money) not returned to him in an amount equal to the actual value of the property, to wit, $10,000," not the return of the money he allegedly packed into his luggage. ECF 1-1 at ¶ 17. Because there is no specificity or clarity regarding the money that Plaintiff describes in his Complaint, or its packaging, Plaintiff fails to state a claim for replevin.

### D. Plaintiff Does Not Allege Any Facts to Support His Conversion and Theft Claims.

Even if the Court were to find that it had jurisdiction over Plaintiff's conversion and theft claims, the United States requests that it dismiss those counts pursuant to Rule 12(b)(6) because the claims are devoid of factual enhancement. The Supreme Court has held that although "the pleading standard Rule 8 announces does not require 'detailed factual allegation' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

9

678. Yet, this Complaint makes such an accusation, totally devoid of any factual allegations tending to show that the United States or its agents or employees converted or stole Plaintiff's money.

Conversion, under Ohio law, is "'a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" *Haul Transport of VA, Inc. v. Morgan*, 1995 WL 328995, *3 (Ohio Ct. App. June 2, 1995), quoting *Zacchini v. Scripps-Howard Broadcasting Co.*, 351 N.E. 2d 454, 456 (Ohio 1976). The elements of conversion in Ohio are "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Id*. (internal quotation and citation omitted).

In Ohio, "anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law…." Ohio Rev. Code Ann. § 2307.60(A)(1). Theft is a crime in Ohio, comprised of intent to deprive, knowing exertion of control over the property or services of another without consent, or by deception, threat, or intimidation. *See* Ohio Rev. Code Ann. § 2913.02.

Plaintiff provides no factual development that would allow the Court to conclude that it is more plausible than not that a TSA employee intended to deprive Plaintiff of his money or otherwise dispose of it. Indeed, by also suing co-defendant Frontier Airlines using the exact same allegations, Plaintiff indicates that he does not know which entity (if any) is responsible for the disappearance of his money.

Because Plaintiff fails to state claims of conversion and theft, Defendant respectfully requests that the Court dismiss those counts.

### D. Plaintiff Also Fails to State a Claim for Intentional Infliction of Emotional Distress.

Plaintiff alleges that Defendants' "business tactics and blatant lack of concern for its customers were extreme and outrageous." ECF 1-1 at ¶ 31. Merely stating that an act was extreme and outrageous, though, does not satisfy the relevant pleading standard for intentional infliction of emotional distress.

"To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure." *McKee v. McCann*, 102 N.E.3d 38, 45 (Ohio. Ct. App. 2017). In Ohio, "it is not enough that the defendant has acted with an intent which is tortious or even criminal. […] Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Mendlovic v. Life Line Screening of Am., Ltd.*, 877 N.E.2d 377, 386 (Ohio Ct. App. 2007). Additionally, "a legally sanctioned act" cannot give rise to a claim of intentional infliction of emotional distress. *Scott v. Spearman*, 684 N.E.2d 708, 712 (Ohio Ct. App. 1996).

Plaintiff does not explain which "business tactics" caused his emotional distress, other than to say a "blatant lack of concern for its customers." A "blatant lack of concern for customers," however, is nowhere near extreme and outrageous conduct. Far more personalized

11

and far-reaching interactions than a blatant lack of concern for customers have been found not to rise to the level of extreme and outrageous conduct. *See Beckloff v. Amcor Rigid Plastics USA, LLC*, 93 N.E.3d 329, 341 (Ohio Ct. App. 2017) (employer disciplined and later terminated employee, during which time employee felt unsafe); *Krlich v. Clemente*, 98 N.E.3d 752, 758-9 (Ohio Ct. App. 2017) (telephonic harassment, threats of physical harm, attacks on reputation, constant honking of car horn outside residence, driving on residential lawn, shooting residence with paintballs, and strewing garbage on lawn); *Mendlovic*, 173 Ohio Ct. App. at 58 (employer barked at employee during company meeting, yelled, denied request for vacation, and terminated employee); *Perkins v. Lavin*, 648 N.E.2d 839, 842 (Ohio Ct. App. 1994) (hospital provided blood transfusion to patient over her express wishes not to receive one).

Without greater development of Defendants' "blatant lack of concern for its customers," Plaintiff fails to state a claim for intentional infliction of emotional distress under Ohio law.

## CONCLUSION

For the reasons stated above, this Court should dismiss Plaintiff's complaint with prejudice.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to 28 U.S.C. § 1746, undersigned counsel certifies that the foregoing Memorandum in Support of Defendant's Motion to Dismiss is 12 (twelve) pages in length.

*s/ Lisa Hammond Johnson*
Lisa Hammond Johnson
Assistant United States Attorney